IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 09-cr-20059-JWL |
| ) | |
| CASEY FRAKES ) | |
| ) | |
| Defendant ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW defendant, Casey Frakes, by and through his attorney, Michael R. Clarke, of Clarke & Wilson, LLC, and respectfully submits that a sentence of five (5) imprisonment is sufficient to comply with the purposes of sentencing as set forth in paragraph (2) of 18 USCS § 3553. In support, the defendant offers the following:

**Introduction**

"A district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See 551 U.S., at 347–348, 127 S. Ct. 2456 at 2480, 168 L. Ed. 2d 203. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. See id., at 351, 127 S. Ct. 2456, 168 L. Ed. 2d 203. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and

ensure that the justification is sufficiently compelling to support the degree of the variance." Gall v. United States, 552 U.S. 38 (U.S. 2007).

## The Statutory Sentencing Range

The minimum term of imprisonment for Count 1 is five (5) years and the maximum is twenty (20) years.  There is no minimum sentence for Count 2; the maximum term of imprisonment for Count 2 is ten (10) years.

## The Sentencing Range Established Pursuant to Guideline §2G2.2

Paragraph 74 of the Presentence Investigation Report in this case states, " Pursuant to U.S.S.G. Chapter 5, Part A, based upon a total offense level of 37 and a criminal history category of I, the guideline range for imprisonment is 210 to 240 months (due to statutory maximum of 20 years on Count 1).

## How Much Deference Should be Given to Guideline §2G2.2?

"As judges across the country have recognized, the guideline for child pornography offenses is seriously flawed and is accordingly entitled to little respect." United States v. Phinney, 599 F. Supp. 2d 1037 (E.D. Wis. 2009).  The reason is that Guideline §2G2.2 of the Federal Sentencing Guidelines Manual was not based on empirical data or the sentencing expertise of the Sentencing Commission and therefore it is not entitled to the usual deference. As one court noted,

> The guideline provisions relating to child pornography offenses of this nature do not reflect the kind of empirical data, national experience, and independent expertise that are characteristic of the Commission's institutional role.  The review of the development of those provisions and the history of child pornography legislation described in the recently published paper cited by Judge Adelman indicates that the guidelines for these offenses have been repeatedly raised despite evidence and recommendations by the Commission to the contrary so that now less than 5% of the defendants affected by the changes fall within the classes of mass producers, repeat abusers, and mass distributers that Congress intended to target for the lengthiest sentences.  See Troy Stabenow, Deconstructing the Myth

of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines, at 27, available at http://www.fd.org/pdf_lib/Deconstructing the Child Pornography Guidelines 6.10.08.pdf (June 10, 2008).[1] In this case … factors that are present in almost all current child pornography cases, i.e., use of a computer, number of depictions, operated to increase the guideline range significantly above the mandatory minimum, even for first offenders with no history of sexually exploiting or abusing minors, or producing, marketing or selling child pornography.  United States v. Ontiveros, 2008 U.S. Dist. LEXIS 58774 (E.D. Wis. July 24, 2008)

Chief Judge Joseph R. Goodwin of the US District Court for the Southern District of West Virginia, Charleston Division, provided a similar analysis of Guideline § 2G2.2 in United States v. Cruikshank, 2009 U.S. Dist. LEXIS 103279 (S.D. W. Va. Nov. 6, 2009).  In his opinion, Chief Judge Goodwin writes,

> Section 2G2.2--the child pornography Guideline-- is not entitled to the usual deference due the Guidelines.  The Sentencing Commission was established to eliminate gross disparities in sentencing, to control crime through incapacitation and deterrence, and to rehabilitate offenders.  See United States v. Booker, 543 U.S. 220, 253, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity.").  The Sentencing Guidelines are generally "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 594, 169 L. Ed. 2d 445 (2007).  Some, however, like § 2G2.2, are not grounded in empirical analysis, but rather on statutory directive. See Stabenow, at 4-24 (detailing the legislative history of the child pornography Guidelines).  The Supreme Court has recognized that such Guidelines "do not exemplify the Commission's exercise of its characteristic institutional role." Kimbrough, 128 S. Ct. at 574.

Judge Goodwin goes on to identify some of the more specific problems with the application of Guideline §2G2.2,

> Because they are not based on empirical data and past practices, the Guidelines for consumers of computer-based child pornography are skewed upward.  Instead of imposing enhancements for more severe offenses, the § 2G2.2 enhancements apply in nearly every case. See U.S. SENTENCING GUIDELINES MANUAL, Supp. to App. C, Amendment 664, at 58 (noting "several specific offense

---

[1] Mr. Stabenow's paper provides perhaps the most thorough analysis of Guideline §2G2.2 and the reasons the Guideline is not entitled to the usual deference.

characteristics which are expected to apply in almost every case (e.g., use of a computer, material involving children under 12 years of age, number of images)"). There is a two-level increase if the material involved a minor under the age of twelve, a two-level increase if the material portrays sadistic or masochistic conduct; and an anachronistic two-level increase if the offender used a computer. Furthermore, § 2G2.2 imposes quantity-based enhancements untethered to moral culpability. An offender possessing between 10 and 150 images receives a two-level increase; between 150 and 300 receives a three-level increase; between 300 and 600 incurs a four-level increase; and over 600 images warrants a five-level increase. I fail to understand how an offender with 9 images of children being sexually abused is less culpable than one with 601 such images. While both offenders have committed the same crime--the only difference being a marginal increase of demand on the market--they will have Guidelines sentences that could vary by several years. In an instance of troubling irony, an individual who, sitting alone, obtained images of sexually exploited children on his computer, could receive a higher sentence than the Guidelines would recommend for an offender who actually rapes a child. See Stabenow, at 27-29. United States v. Cruikshank, 2009 U.S. Dist. LEXIS 103279 (S.D. W. Va. Nov. 6, 2009)

In fact, courts all over the country have reached the conclusion that Guideline 2G2.2 is not entitled to the usual deference due the Guidelines.[2] Likewise, this court should give significantly less deference to Guideline §2G2.2 when fashioning an appropriate sentence in this case.

---

[2] See also, United States v. Noxon, 2008 U.S. Dist. LEXIS 87477 (D. Kan. Oct. 28, 2008) ("Several courts have noted that the Guidelines for child pornography cases have diverted from the empirical approach used by the Sentencing Commission for other types of crimes and, therefore, have made a variance from the Guidelines. See, for example, U.S. v. Hanson, 561 F.Supp.2d 1004, 1009-1011 (E.D.Wis. 2008). We agree with this analysis.") United States v. Baird, 580 F. Supp. 2d 889 (D. Neb. 2008) ("Because the Guidelines do not reflect the Commission's unique institutional strengths, the court affords them less deference than it would to empirically-grounded guidelines.") United States v. Shipley, 560 F. Supp. 2d 739 (S.D. Iowa 2008) ("Thus, because the guidelines at issue in this case do not reflect the unique institutional strengths of the Sentencing Commission in that they are not based on study, empirical research, and data, like Chief Judge Bataillon, this Court "affords them less deference than it would to empirically-grounded guidelines."'") United States v. Grober, 595 F. Supp. 2d 382 (D.N.J. 2008) ("The sentencing court, as Rita teaches, "filters the Guidelines' general advice through §3553(a)'s list of factors." The Court arrives at this point in the sentencing analysis convinced that for a typical downloading case, which this one assuredly is, the applicable guideline, §2G2.2, cannot be given deference and produces an unreasonable sentencing range even before considering the sentencing factors in §3553(a).") United States v. Hanson, 561 F. Supp. 2d 1004 (E.D. Wis. 2008) ("An offender who appeared fairly typical, one with no prior record, found himself in a guideline range that exceeded the statutory maximum at the high end. I could not conclude that under the circumstances of this case, given all of the flaws in the guideline discussed above, that

**<u>The Need to Avoid Unwarranted Sentencing Disparities</u>**

It is also important for both Mr. Frakes and the credibility of the criminal justice system that his sentence is consistent with other less culpable offenders and not on par with those who commit far more serious acts of production, distribution, exploitation and abuse. Chief Judge Goodwin noted in United States v. Cruikshank, 2009 U.S. Dist. LEXIS 103279 (S.D. W. Va. Nov. 6, 2009) that more often than not, courts are not imposing guideline sentences in child pornography cases.[3] In United States v. Noxon, 2008 U.S. Dist. LEXIS 87477 (D. Kan. Oct. 28, 2008) Judge Richard D. Rogers pointed out that Guideline §2G2.2 takes "a fairly ordinary child pornography crime for a first offender" and suggests a sentence at or above the statutory maximum. Yet common sense tells us that there is "a spectrum of criminal culpability is involved in this crime. Those who produce and distribute these images are at one end of the spectrum. They deserve the harshest punishment. At the other end of the spectrum are men like [Mr. Frakes] who view these disgusting images. Rather than physically harming a child, their

---

the range deserved deference.") United States v. Riley, 2009 U.S. Dist. LEXIS 88411 (S.D. Fla. Sept. 4, 2009) ("The Court agrees with Judge Adelman's analysis of the problems with section 2G2.2, and therefore concludes that substantial deference to the recommended Guideline range is not appropriate in this case.") United States v. Doktor, 2008 U.S. Dist. LEXIS 104737 (M.D. Fla. Dec. 19, 2008) ("In essence, the Court was critical of the Guideline because it was not based on empirical data or the sentencing expertise of the Commission. See Troy Stabenow, Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines.") United States v. Johnson, 588 F. Supp. 2d 997 (S.D. Iowa 2008) ("Thus, because the guidelines at issue in this case do not reflect the unique institutional strengths of the Sentencing Commission in that they are not based on study, empirical research, and data, this Court, as it did in United States v. Shipley, "affords them less deference than it would to empirically-grounded guidelines."")

[3] "Because of the inequities presented by § 2G2.2, a number of courts have imposed below-Guidelines sentences, even in mine-run cases. Between July 1, 2009 and September 30, 2009, district courts imposed within-Guidelines sentences under § 2G2.2 in only 44.6% of cases, compared to the overall average of 55.2%. Of the 662 cases that imposed sentences outside of the Guidelines range, 449 were below range. U.S. SENTENCING COMM'N, PRELIMINARY QUARTERLY DATA REPORT 14 (2009), http://www.ussc.gov/linktojp.htm." United States v. Cruikshank, 2009 U.S. Dist. LEXIS 103279 (S.D. W. Va. Nov. 6, 2009)

criminal act is complete by entering a market with a few clicks of a mouse ... [w]e must differentiate between those who create child pornography and those who consume it." United States v. Cruikshank, 2009 U.S. Dist. LEXIS 103279 (S.D. W. Va. Nov. 6, 2009).[4]  The failure of the Guideline to ensure Mr. Frakes' sentence is consistent with other less culpable offenders and not on par with those who commit far more serious acts of production, distribution, exploitation and abuse is yet another reason the court should give significantly less deference to Guideline §2G2.2 when fashioning an appropriate sentence in this case.

### 18 USCS § 3553 Factors to be Considered in Imposing a Sentence.

In 18 USCS § 3553 Congress directed courts to impose sentences sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of 18 USCS § 3553.  Specifically, after consulting the Guidelines, in determining the particular sentence to be imposed, a court shall consider—

1) the nature and circumstances of the offense and the history and characteristics of the defendant;
2) the need for the sentence imposed--
   A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   B) to afford adequate deterrence to criminal conduct;
   C) to protect the public from further crimes of the defendant; and
   D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

---

[4]  See also, United States v. Baird, 580 F. Supp. 2d 889 (D. Neb. 2008) ("The greater culpability of an actual predator or abuser should be reflected in a sentence that greatly exceeds the punishment for the exploitative crimes that do not involve acts of abuse by a defendant.  In fact, the "distribution" criteria is not helpful in this case.  Notwithstanding the agreement between the parties concerning a two-point distribution enhancement, the court finds that the defendant's distribution of child pornography, if extant, was minimal.  The Guidelines at issue do not adequately reflect those important distinctions in levels of culpability.")

As set forth in more detail below, the defense submits that the mandatory minimum sentence of five (5) years imprisonment is sufficient to comply with the purposes set forth in paragraph (2) of 18 USCS § 3553.

## Offense Conduct

The evidence presented at trial was that Mr. Frakes used the Limewire peer-to-peer file-sharing program to download pornographic video clips, seven (7) of which contained depictions of child pornography.  The computer used to download the video clips was located in Mr. Frakes bedroom in the house he lived in with his mother and older brother.  Mr. Frakes did not pay for the video clips, he did not email them, he did not trade them or otherwise show them to anyone else.  The video clips were not organized into unique folders on the computer; instead they remained in the Limewire shared directory they were downloaded into along with the hundreds of adult pornographic video clips that had been similarly downloaded onto the computer.  In fact, because the video clips remained in the folder they were downloaded into they were, by default, accessible to other users of the Limewire peer-to-peer file-sharing program whenever the computer was logged onto the Limewire service.  Therefore, even though Mr. Frakes did not email them, he did not trade them, he did not advertise them as being available or otherwise show them to anyone else he nevertheless "distributed" them for purposes of 18 USCS § 2252.

## History and Characteristics of the Defendant

Mr. Frakes is thirty-one years old and has no criminal history.  At the time of the offense conduct, Mr. Frakes lived with his mother and older brother in the house where he was raised. Prior to being taken into custody after trial, Mr. Frakes was employed full-time with Pinnacle Lawn Care.  Mr. Frakes has no significant history of alcohol or substance abuse.  Mr. Frakes has a girlfriend and an excellent relationship with his parents, siblings and extended family.  Mr.

Frakes' history and personal characteristics strongly suggest that he has a low potential for recidivism.

### The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law and to Provide Just Punishment for the Offense

The prosecution of these crimes in and of themselves satisfies the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. On the other hand, "[a] sentence that is disproportionately long in relation to the offense is unjust and likewise fails to promote respect." United States v. Ontiveros, 2008 U.S. Dist. LEXIS 58774 (E.D. Wis. July 24, 2008). In fact, given that Mr. Frakes did not physically abuse children, he did not gain financially from the distribution of child pornography, he did not pay for the video clips, he did not email them, he did not trade them or otherwise show them to anyone else, a sentence longer than the statutory minimum could actually result in community sympathy for Mr. Frakes and resentment toward the criminal justice system.

### To Afford Adequate Deterrence to Criminal Conduct

The prosecution of this crime, in and of itself, is an adequate deterrent to similar conduct. This prosecution's greatest opportunity to contribute toward general deterrence is increasing public awareness that simply downloading free video clips containing child pornography is illegal and even if you engage in this conduct anonymously in the privacy of your bedroom you can still be caught and you will be publically prosecuted. "Any prison sentence, let alone the mandatory minimum of five years, accomplishes specific and general deterrence. No one who hears that he is serving five or more years gets any message other than how catastrophic the consequences are to those who download child pornography." United States v. Grober, 595 F. Supp. 2d 382 (D.N.J. 2008). The shame and humiliation of being prosecuted for possessing child pornography is indisputably a significant deterrent. As noted in United States v. Ontiveros,

8

2008 U.S. Dist. LEXIS 58774 (E.D. Wis. July 24, 2008), [Mr. Frakes] will be "required to register as a sex offender, which registration makes no distinction between whether the offender actually committed a sexual assault of a child or simply possessed child pornography. The shameful label "Sex Offender" will follow him the rest of his life and will substantially limit where he will be able to work and even live. Add to this a lifetime under the supervision of a probation agent after his release from prison, which carries the risk of additional incarceration, and it is clear that the sentence imposed in this case offers substantial deterrence both to [Mr. Frakes] and anyone else who would consider committing such a crime."

### To Protect the Public from Further Crimes of the Defendant

Conditions of Supervised Release can protect the public from further crimes of the defendant. Mr. Frakes can be prohibited from using a computer or there could be a requirement that any computer used by Mr. Frakes have software installed that blocks access to pornographic images. See, for example, United States v. Phinney, 599 F. Supp. 2d 1037 (E.D. Wis. 2009) Beyond that, there was no evidence at trial or information in the Presentence Investigation Report that suggests that Mr. Frakes poses a threat of physical harm to anyone. In fact, the timeline of this prosecution proves that the Government never saw Mr. Frakes as posing a serious threat of harm. There was more than a yearlong delay between discovery of the crimes and indictment. Detective John Howe's undercover Internet investigation discovered the illegal video clips on the Frakes computer on March 12, 2008. By March 28, 2008, investigators knew that the computer involved was located at the Frakes' home. Over two months later, on June 10, 2008, investigators executed a warrant seizing the computer from the Frakes' home. On that same day, investigators interviewed Mr. Frakes and the other members of the family. By the end of that day, investigators believed Mr. Frakes was responsible for downloading the video clips

onto the computer seized from the home.  However, rather than filing a complaint against Mr. Frakes, the US Attorney's Office elected to wait eleven (11) months for an indictment to be handed down against Mr. Frakes which didn't occur until May 20, 2009.  Unlike drug conspiracies where individual prosecutions are often delayed so as not to compromise other investigative efforts, there was no need to delay the prosecution of Mr. Frakes.  The yearlong delay from investigation to indictment was primarily a matter of resource allocation and because Mr. Frakes poses no threat of harm his prosecution was not a priority.  Obviously there was no urgency felt by the Government to immediately detain Mr. Frakes or otherwise protect the public from Mr. Frakes because the Government knew he didn't pose a threat.  The Government knew he was not having inappropriate contact with children, the Government knew he was not financially contributing to the child pornography industry, the Government knew he was not purposefully transferring child pornography anyone else.  The Government knew that all he had done was download free pornography on his computer in the privacy of his bedroom and therefore he posed no risk of harm and therefore his prosecution was not urgent.

**<u>To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or other Correctional Treatment in the Most Effective Manner</u>**

Mr. Frakes has the education he needs to be a productive member of society.  He graduated from high school, has achieved an associate's degree and has attended college.  To the extent treatment is needed, a five-year sentence, followed by supervision, is sufficient to insure that this need will be met.  Five years is a sufficient amount of time to receive treatment offered within the federal prison system, and to the extent further treatment is called for, it can be ordered as a condition of his release.  See United States v. Ontiveros, 2008 U.S. Dist. LEXIS 58774 (E.D. Wis. July 24, 2008).  Now as he will be in the future, Mr. Frakes is housed with sex offenders who have been accused or convicted of much more heinous sex crimes and that group

10

of prisoners is segregated because of the risk of abuse from other inmates. Instead of providing an environment conducive to rehabilitation, incarceration places Mr. Frakes in an environment where he is at risk for both psychological and physical harm. Given the fact that Mr. Frakes poses no known risk of harm to others, common sense and experience tells us that rehabilitative programs that can be incorporated into Mr. Frakes' life as a citizen rather than a prisoner are much more likely to be productive.

### Conclusion

Under the unique facts of this case a sentence of five (5) year imprisonment is sufficient to comply with the purposes of sentencing set forth in paragraph (2) of 18 USCS § 3553.

Respectfully submitted,

> By: /s/ Michael R. Clarke
> Michael R. Clarke
> KB# 19123
> Clarke & Wilson, LLC
> 1040 New Hampshire
> Lawrence, KS 66044
> (785) 832-2181
> (913) 273-1902 fax
> Attorney for Defendant Casey Frakes
> mrc@clarkeandwilson.com

### Certificate of Service

I hereby certify that on the November 15, 2009, I electronically filed the foregoing with the clerk of the court using the CM/ECF system, which will send a notice of electronic filing to the attorneys of record, including AUSA Kim Martin at Kim.Martin@usdoj.gov, Assistant United States Attorney for the District of Kansas.

> By: /s/ Michael R. Clarke
> Michael R. Clarke
> KB# 19123